**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Kathy M. Jones,                                    )
                                                   )    Case No. 1:06-CV-007
                    Plaintiff,                     )
                                                   )
        vs.                                        )
                                                   )
City of Middletown, Ohio,                          )
et al.,                                            )
                    Defendants.                    )

O R D E R

        This matter is before the Court on Defendants' motion for summary judgment (Doc. No.

34), Plaintiff's response in opposition to Defendants' motion for summary judgment (Doc. No.

38), Defendants' motion to strike (Doc. No. 45), Plaintiff's response in opposition to

Defendants' motion to strike (Doc. No. 46), and Defendants' reply to Plaintiff's response to

Defendants' motion to strike (Doc. No. 47).  For the reasons set forth below, Defendants' motion

for summary judgment with respect to Plaintiff's disparate treatment claim is not well-taken and

is **DENIED**; Defendants' motion for summary judgment with respect to Plaintiff's retaliation

claim is not well-taken and is **DENIED**; Defendants' motion to strike is **GRANTED IN PART**

**AND DENIED IN PART**.

I. Background

        Plaintiff Kathy M. Jones asserts claims of age, gender, and national origin discrimination,

and a claim of retaliation, against the City of Middletown, Ohio, the Middletown Police

Department, Bill Becker, the city manager of Middletown, Major Mark Hoffman of the

Middletown Police Department, and a number of John Does and unidentified corporations

named as "ABC Companies."  Plaintiff also asserts a state law claim for intentional infliction of

emotional distress.  Plaintiff is an Asian-American female commissioned as a police officer with

the Middletown Police Department in 1990.  She continued in that employment until September

7, 2004.  Complaint ¶ 10.  Plaintiff's direct supervisor is Sergeant Jim Cunningham, and her

other supervisors while employed as a police officer include Major Mark Hoffman, Chief of

Police Mark Bruck, and City Manager Bill Becker.  Doc. No. 38, Ex. A.

On August 18, 2004, Plaintiff was dispatched by her superiors to assist Warren County

Deputy Sandy Brooks, who had been assaulted by an inmate, Estel Buck.  Plaintiff Dep. at 122.

Deputy Brooks had been escorting Buck to the dentist when he attempted to place his chain

shackle around Brooks' neck to choke her.  Doc. 34, Ex. B.  Two other Middletown police

officers were at the scene when Plaintiff arrived.  Plaintiff's Dep. at 122.  Plaintiff was

dispatched while the assault was occurring, but when she arrived at the initial scene, Buck was

sitting unsecured in back of Brooks' cruiser.  Id. at 123.  Plaintiff subsequently provided backup

while the other officers handcuffed Buck.  Id.  After the inmate was secured, Plaintiff collected

evidence at the scene pursuant to her duties as an evidence technician.  Id. at 124.  Buck was

then transferred to Plaintiff's cruiser to be transported to the jail for booking.  Id. at 125.

Plaintiff admits she had become angry with Estel Buck because of his actions toward

Deputy Brooks.  Id. at 125.   Before leaving the scene, Plaintiff stated to the other officers her

intention to "take [Buck] somewhere."  Plaintiff also stated that she "wondered how many days"

she would be suspended for doing so.  Id. at 126.  Plaintiff's statements were meant to implicitly

convey her plans to assault Buck, and Plaintiff was confident the other officers understood the

import of her words.  Plaintiff anticipated being caught and disciplined if she executed her plan,

but nonetheless wanted to punish Buck.  Id. at 7, 126, 130.  While transporting Buck, Plaintiff

motioned to her taser and held up her fingers like taser prongs to indicate to another officer her

intention to administer an electric shock to Buck.  Id. at 130.  Pursuant to her plan, Plaintiff

moved Buck out of sight of the jail cameras in order to "tase" him.  Before tasing Buck, she

pushed him and told him to stop resisting.  Even though Buck had been cooperative to this point,

this was to bolster the lie she planned to tell her superiors when asked what happened.  Id.  at

128.  Upon pushing him, Plaintiff hit Buck with her taser, cycling it twice.  Id. at 121.  There is

disagreement as to how long Plaintiff administered the electric shock, but it lasted between seven

and ten seconds.  Doc. No. 34, Ex. B; Plaintiff Dep. at 120.  It appeared to Plaintiff that the

inmate was in a lot of pain from the taser.  Plaintiff Dep. at 122.

 After the incident, Plaintiff lied to Sergeant Cunningham, stating she had to tase Buck

because he moved away from her.  Id. at 148.  On September 1, 2004, a preliminary hearing was

held in then-Chief of Police Bill Becker's office, where Plaintiff was advised of her contractual

right to have a union representative and attorney present.  Doc. No. 26, Ex. B.  During the

hearing, when Becker asked Plaintiff how he could be sure she would not react in a similar

manner if faced with similar circumstances, Plaintiff answered she did not feel she should be

placed in a similar situation.  In a memorandum dated September 3, 2004, Becker recommended

to the city manager that Plaintiff be terminated as a police officer due to violations of Rule 102

Conduct Unbecoming and Rule 135 Use of Force.  Id.  Becker noted that Plaintiff ignored the

mission of the Middletown Police Department to protect and serve the public with honor,

integrity, and professionalism.  Id.  On September 7, 2004, the city terminated Plaintiff's

employment.  Plaintiff Dep. at 6.

Plaintiff claims she was treated differently from other similarly-situated male police officers.  Plaintiff alleges that nine separate similarly-situated Middletown Police Officers, each of whom was outside of her protected classification and under the same superiors as Plaintiff, were treated better than Plaintiff.  Doc. 38.  Plaintiff first points to Police Officer David Kirsch.  Kirsch is a white male with the same direct and ultimate superiors, Becker and Bruck, as Plaintiff.  From Plaintiff's review of Kirsch's disciplinary file, Plaintiff contends that Kirsch has had numerous use of force and conduct unbecoming violations, yet has received lighter penalties than Plaintiff.  Doc. 41-5; Plaintiff Aff. ¶ 2.

Next, Plaintiff points to Police Officer Kenneth Mynhier, a white male with the same ultimate superiors as Plaintiff.  On May 28, 2005, Mynhier responded to a disturbance involving Damon Selby.  Mynhier ordered Selby to leave the scene several times, and Selby eventually complied.  As he was walking away, Selby flipped a cigarette, which hit Mynhier in the foot.  Selby also made a statement to Mynhier.  The exact wording is in dispute, but both Mynhier and Selby agree it included the word "fuck."  Doc. No. 41-3 at 7.  Mynhier claims he then ordered Selby to come back and put his hands behind his back, but Selby kept walking and refused each command.  Selby claims he said "What the fuck ever," and turned to go, to which Mynhier responded "What did you say, punk?"  Selby claims he was then walking away when he got tased.  He further explains that he was tased a second time because one of his arms was caught under his body, preventing him from putting it behind his back.  On the other hand, Mynhier claims he tased Selby a second time for refusing to put his hands behind his back, and a third time for his refusal to enter the squad car.  Id. at 8.  Based on his actions, Mynhier was assessed a two-day suspension without pay for violations of Rule 135 Use of Force and G.O. 1.3.4 Use of

4

Authorized Less than Lethal Weapon.  Id. at 1.  Plaintiff argues that despite Mynhier having the same supervisors and engaging in similar conduct and violations as Plaintiff, Mynhier was allowed to continue in employment.  Complaint ¶ 23.

Plaintiff also points to Police Officer Terry Flack, a white male under the ultimate supervision of Bruck and Becker.  On April 14, 2005, Flack was dispatched to a call involving a probation violation by Andrew Gomez.  Doc. No. 41-4 at 9.  Prior to that date, Flack had two suspensions from his duties as an Officer for truthfulness violations, as well as a written reprimand for violating use of force rules.  Id. at 4.  On the date in question, when Officer Mynhier arrived at the scene prior to Flack's arrival, Gomez tried to flee.  Mynhier was able to subdue and handcuff Gomez, at which point Flack arrived.  Gomez claims Flack ran up and attempted to choke him, allegedly asking Gomez "why should I let you breathe motherfucker?" Id. at 9.  Flack also allegedly told Gomez that being picked up by his neck was the least of his worries.  Id. at 10.  Flack, on the other hand, claimed he merely grabbed Gomez by the shirt and twisted his collar.  Id. at 12.  However, the mug shot Flack used to show his superiors how he had grabbed Gomez by the shirt was a mug shot taken two years previous, not from the recent booking.  Id. at 2.  Consequently, Mike Bruck recommended that Becker terminate Flack's employment for use of force and truthfulness violations.  Doc. No. 41-4 at 3.  However, he was assessed a twenty-day suspension and given the chance to be reinstated for good behavior.  Doc. No. 43-2 at 4-5.

Plaintiff further claims that Flack and other similarly-situated white officers were allowed to attend therapy sessions and remain in their employment despite being deemed "Unfit" to return to employment.  Doc. No. 38-2 at 1.  Plaintiff alleges that Flack was sent to Dr. Daum,

a vocational evaluator and counselor, who evaluated him as "Unfit" to return to work. Nonetheless, Flack allegedly was allowed to attend twenty therapy sessions with Daum, after which he was allowed to return to work.  Id.  In contrast, Plaintiff claims she was cleared to work by Dr. Daum on the condition she participate in psychotherapy.  Doc. No. 25-3 at 3.  Dr. Daum's initial assessment was on August 19, 2004 (Doc. No. 25-3 at 1), which predated the September 3, 2004, letter from Bill Becker to Plaintiff recommending her employment be terminated (Doc. No. 34-2).  Moreover, after assessing Plaintiff again in April 2005, Dr. Daum concluded that Plaintiff did not even need to receive counseling and psychiatric treatment to be fit for duty. Doc. No. 25-3 at 8.  Yet, Plaintiff alleges that she was never permitted to view Dr. Daum's reports, nor was she given the chance to attend the recommended therapy sessions.  Complaint ¶ 18.  Plaintiff was allowed to return to work after seeing Dr. Daum, but only for two weeks.  Doc. No. 38-2, at 1.  This all culminated in Plaintiff being notified on September 7, 2004, that her employment was being terminated.  Id.

On January 6, 2006, Plaintiff filed a complaint in this Court (Doc. No. 1) asserting claims of age, gender and national origin discrimination, a claim of retaliation, and a state law claim for intentional infliction of emotional distress.  Plaintiff's age discrimination claims arise under the federal Age Discrimination in Employment Act, 29 U.S.C. § 1983, et seq., and the Ohio Civil Rights Act, Ohio Revised Code Chapter 4112.  Plaintiff's gender and national origin discrimination claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1983, and the Ohio Civil Rights Act.  On March 13, 2006, Defendants moved for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Doc. No. 5.  On May 31, 2006, this Court granted Defendants' motion for partial judgment on the

pleadings on Plaintiff's claim for age discrimination.  The Court also dismissed Plaintiff's claims against the Middletown Police Department and Plaintiff's claim for intentional infliction of emotional distress against the City of Middletown. (Doc. No. 12).  On January 9, 2007, the parties entered into a stipulation whereby the sexual harassment and sex discrimination claims were dismissed.

On March 14, 2007, Defendant filed a motion for summary judgment on Plaintiff's remaining claims of disparate treatment and retaliation. Doc. No. 34.  On April 9, 2007, Plaintiff filed a response to the motion for summary judgment.  Doc. No. 38.  Plaintiff argues there are genuine issues of material fact with respect to her claim that the adverse employment actions taken against her were discriminatory since other similarly-situated white male officers had routinely received more lenient punishment for similar actions.  Plaintiff contends that Defendants' alleged reasons for the termination are pretextual.  Plaintiff further argues she has established a claim for retaliation because her evidence demonstrates that Defendants' withheld information about Dr. Daum's opinion after Plaintiff asserted her rights as a member of a protected class.  Plaintiff contends that the withholding of this information establishes that Defendants' proffered legitimate nondiscriminatory reason for terminating her was pretext.

Defendants contend that pursuant to Federal Rule of Civil Procedure 56(e), Plaintiff has not set forth specific facts to demonstrate that she was treated differently from other comparable police officers.  Therefore, Plaintiff cannot establish a prima facie case of disparate treatment because she cannot establish that a similarly-situated employee was treated more favorably than her.  In any event, Defendants argue that Plaintiff cannot rebut their legitimate non-discriminatory reason for terminating her employment – Plaintiff's violation of police procedures

regarding use of force and truthfulness.  Defendants contend that Plaintiff engaged in a premeditated assault and cover-up on a non-resisting, handcuffed prisoner.  Finally, Defendants' argue that the Court should grant summary judgment on Plaintiff's retaliation claim.  Defendants contend that Plaintiff's employment was terminated for the legitimate nondiscriminatory reason that she made a premeditated assault on a prisoner.

On June 1, 2007, Defendants filed a motion to strike Plaintiff's affidavits and exhibits (Doc. No. 38 Parts 1-7; Doc. No. 41 Parts 1-4; Doc. No. 42; Doc. No. 43 Parts 1-2) offered in support of her opposition to Defendants' motion for summary judgment.  Doc. No. 45. Defendants argue that Plaintiff's exhibits and affidavits do not comply with multiple rules of evidence.  Doc. No. 45.  First, Defendants argue that Plaintiff's affidavits were made without personal knowledge in contravention of Federal Rule of Civil Procedure 56(e).  See Fed. R. Civ. P. 56(e).  Defendants contend that Plaintiff possesses no personal knowledge of any of the alleged incidents regarding other similarly-situated police officers.  Second, Defendants argue that Plaintiff's affidavits are not relevant.  Therefore, they do not "set forth such facts as would be admissible in evidence."  Id.  Defendants contend that Plaintiff committed a premeditated assault and cover-up on a non-resisting, handcuffed prisoner and has not presented evidence showing any other police officer committed a similar act. Doc. No. 45.  Third, Defendants argue that the documents attached to the affidavits are irrelevant hearsay.  Id.  Defendants contend that the exhibits do not pertain to conduct similar to Plaintiff's act, and are thus irrelevant and inadmissible pursuant to Federal Rule of Evidence 402.  See Fed. R. Evid. 402.  Moreover, Defendants argue, the newspaper and internet articles presented by Plaintiff are hearsay and inadmissible.  Defendants further contend that the exhibits do not fall under either the business

records exception or the public records exception.  Fourth, Defendants argue that the documents attached to the affidavits have not been authenticated and are thus inadmissible.  Doc. No. 45, at 6.

On June 8, 2007, Plaintiff filed a response to Defendants' motion to strike and argued that Defendants' motion should be denied.  Doc. No. 46.  First, Plaintiff argues that the motion is untimely since it was filed well beyond eleven days following the filing of a memorandum in opposition.  Id. at 2.  Second, Plaintiff argues that the motion is without legal merit since she submitted affidavits are based on her personal knowledge of the disciplinary records of other Middletown police officers.  Id.  Plaintiff argues that she obtained personal knowledge from documents obtained through public records requests.  Id.  Moreover, Plaintiff argues that the affidavits contain specific facts that she obtained from personnel files and disciplinary records. Id. at 3.  Plaintiff contends that to require her to have personal knowledge of each disciplinary event regarding white police officers would eliminate all employment discrimination claims.  Id. Third, Plaintiff contends that her affidavits contain relevant evidence.  Id. at 4. Plaintiff argues that Defendants improperly construe the Sixth Circuit standard to require employees to have engaged in identical behavior to be considered similarly-situated.  Id.  Fourth, Plaintiff notes that if Defendants are unwilling to stipulate to the authenticity of the documents at trial, Plaintiff will subpoena the proper records custodian to authenticate the documents.  Id. at 5.  Finally, Plaintiff argues that all the records from the personnel files are admissible under the "public records" exception to the hearsay rule.

Defendants did not file a reply brief in response to Plaintiff's memorandum in opposition to the motion for summary judgment.  Therefore, the Court will decide Defendants' motion for

summary judgment without the benefit of a reply brief.  See S.D. Ohio Civ. R. 7.2(a)(2)

(requiring a reply brief to be "served within eleven (11) days after the date of service of the

memorandum in opposition").

## II. Evidentiary Matters

. Defendants' argue that the documents Plaintiff attached to her affidavits are

inadmissible because they are irrelevant, hearsay, and not properly authenticated.  The Court

initially concludes that the documents Plaintiff attached to her affidavits are relevant.  The Court

further concludes that, except for the newspaper and internet articles, even though the documents

are not based on Plaintiff's personal knowledge, they are authentic and admissible under the

public records exception.

In their motion to strike, Defendants argue that Plaintiff's evidence is not relevant

because she has not presented any evidence of a similarly-situated police officer engaging in

conduct similar to hers.  (Doc. No. 45).  Specifically, Defendants argue that Plaintiff has not

presented evidence of another similarly-situated officer engaging in a pre-meditated assault and

premeditated cover-up on a non-resisting prisoner.  Id.  Moreover, Defendants contend that

Plaintiff has not submitted evidence showing that another similarly-situated officer employed a

taser against a non-resisting, handcuffed prisoner.  Id.

First, the Court concludes, as stated above, that the documents at issue are clearly

relevant.  Federal Rule of Evidence 402 states that "[e]vidence which is not relevant is not

admissible."  Fed. R. Evid. 402.  Federal Rule of Evidence 401 defines "relevant evidence" as

"evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the

evidence." Fed. R. Evid. 401. Thus, the basic standard of relevance is a liberal one. <u>Daubert v.</u>
<u>Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 587 (1993).

Under Rule 401's liberal standard, Plaintiff's affidavits are certainly relevant to her
claims. Defendants try to differentiate Plaintiff's conduct by the fact that it was a premeditated
assault and premeditated cover-up on a handcuffed, non-resisting prisoner. Defendants argue
that Plaintiff has produced no evidence to show another similarly-situated officer deployed a
taser against a handcuffed, non-resisting prisoner. Doc. No. 45.

However, Plaintiff correctly observes that she need not demonstrate an exact correlation
with the employee receiving more favorable treatment, but just "must be similar in all of the
<u>relevant</u> aspects." Doc. No. 46, at 4 (quoting <u>Ercegovich</u>, 154 F.3d at 352) (emphasis in
original). Plaintiff presents evidence that a white, male Middletown police officer with her same
ultimate superiors tased a suspect three times and subsequently received only a two-day
suspension. Doc. No. 41-3 at 2. Plaintiff also alleges that another white male officer attempted
to choke a non-resisting, contained suspect. Doc. No. 41-4 at 9. While such incidents may not
be exactly identical to Plaintiff's actions toward the inmate, a reasonable juror could find
Plaintiff to be similarly-situated to the above two police officers. A reasonable juror could
further find that Flack engaged in a premeditated assault and premeditated coverup on a non-
resisting, secured prisoner when he choked the inmate and then presented to his superiors a
photograph of the inmate from a prior arrest to explain the incident. Certainly the evidence
passes the liberal standards of relevancy under Rule 401. <u>See</u> Fed. R. Evid. 401. Accordingly,
these documents, though not based upon Plaintiff's personal knowledge, are certainly relevant.

However, just because the documents attached to Plaintiff's affidavits are relevant does

not mean that they are admissible.  At the outset, it should be noted that Plaintiff's affidavits are made without personal knowledge.  Federal Rule of Civil Procedure 56(e) provides that affidavits offered in support or opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  An affidavit "based solely upon information . . . received from elsewhere" does not demonstrate personal knowledge and is thus inadmissible hearsay which must be disregarded.  Alpert v. United States, 481 F.3d 404, 409 (6th Cir. 2007).  Personal knowledge "must concern facts as opposed to conclusions, assumptions, or surmise."  Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) (quoting Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999)).  To be based on personal knowledge, the inferences and opinions in the affidavits must be "grounded in observation or other first-hand personal experience."  Visser v. Packer Eng'g Assoc., 924 F.2d 655, 659 (7th Cir. 1991) (quoting Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989)).  They must "not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."  Id.

Defendants argue in their motion to strike that Plaintiff's affidavits and the attached documents are not based upon her personal knowledge.  Doc. No. 45 at 2.  In her affidavit attached to her response to Defendants' motion for summary judgment (Doc. No. 38-2) and her amended affidavit (Doc. No. 41-1), Plaintiff demonstrates no basis for having personal knowledge with respect to the allegedly similarly-situated white male officers.  Plaintiff merely alleges that she was "offered and thoroughly reviewed several memoranda and disciplinary documents relative to white, male Police officers." Doc. No. 38-3.  Additionally, when asked

12

whether she knew of any other police officer who had used a taser against a non-resisting

inmate, Plaintiff answered affirmatively but was not able to identify any officer as she "just

kn[e]w from what she [had been] told" and could not even recall who told her.  Doc. No. 50 at

16.  Such statements are not grounded in first-hand personal observation, but are apparently mere

rumors or surmise.  As such, Plaintiff does not demonstrate personal knowledge of similarly-

situated police officers.

Plaintiff further demonstrates a lack of personal knowledge in her response to

Defendants' motion to strike.  Doc. No. 46.  Plaintiff admits obtaining knowledge of other

officers through public records requests for documents which were subsequently provided to her

by the City of Middletown.  Moreover, Plaintiff avers that her affidavits contain specific facts

that she obtained from personnel records and disciplinary records.  Plaintiff further argues that

requiring personal knowledge of each disciplinary incident involving white male police officers

would eliminate all employment discrimination claims.  Plaintiff finally contends that her failure

to refer to Officers Birk and Hale in her deposition does not mean that any later references to

them must be stricken.  Id.  These arguments, however, fail to establish Plaintiff's personal

knowledge because her knowledge is based solely upon information received from elsewhere.

See Alpert, 481 F.3d at 409.  Plaintiff has not presented any evidence suggesting that her

allegations regarding other police officers are grounded in observation or first-hand personal

experience.  See Visser, 924 F.2d at 659.  Nothing in Plaintiff's deposition or motions and filings

with the Court suggest that she observed any of the alleged incidents regarding other officers or

was physically present during disciplinary meetings involving other officers.

Moreover, that her affidavits contain specific facts does not equate to Plaintiff having

13

personal knowledge.  See Visser, 924 F.2d at 659.  In her response to Defendants' motion to

strike (Doc. No. 46), Plaintiff seeks support from Perez v. Volvo Car Corp., 247 F.3d 303, 316

(1st Cir. 2001).  Specifically, Plaintiff focuses on the Court's statement that "[s]tatements

predicated upon undefined discussions with unnamed persons at unspecified times are simply too

amorphous to satisfy the requirements of 56(e)[ .]"  Perez, 247 F.3d at 316.  This is to be

distinguished from Plaintiff's affidavits being based on specific facts pulled from personnel files

and disciplinary records.  The Court notes, however, that Plaintiff does not even base her

affidavits on undefined conversations, let alone on actual observations or personal experience.

See Doc. No. 38-2.  Instead, Plaintiff simply states that other white, male police officers had

routinely received more lenient punishment for similar actions.  Id. While the police records

appear to have a factual basis, this, by itself, does not establish Plaintiff's personal knowledge.

See Alpert, 481 F.3d at 409; see also Visser, 924 F.2d at 659.

Despite Plaintiff's lack of personal knowledge, however, the Court finds that the

documents are admissible and may be considered on summary judgment for the following

reasons.

1. The documents attached to Plaintiff's affidavits meet certification and authentication
requirements of Federal Rule of Civil Procedure 56(e)

Just because the "Defendants produced the documents does not make them authentic –

production does not equate to authentication."  Steele v. Jennings, No. 2:04-CV-189, 2005 WL

2124152, at *3 (S.D. Ohio Aug. 31, 2005).  Authentication is a "special aspect of relevancy

concerned with establishing the genuineness of evidence and is a condition precedent to

admissibility."  Id.; see also Fed. R. Evid. 901(a).  "The requirements of authentication or

identification as a condition precedent to admissibility is satisfied by evidence sufficient to

14

support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

The Sixth Circuit has held that an affidavit may not rely on unsworn, unauthenticated exhibits,

and that exhibits that have not had a proper foundation laid to authenticate them cannot support

or be considered as evidence on a motion for summary judgment. Logan v. Denny's, Inc., 259

F.3d 558, 570 (6th Cir. 2001); see also Phelps v. Coy, 164 F. Supp.2d 961, 969 n.9 (S.D. Ohio

2000) (documents attached to an affidavit must be either authenticated or certified). Under

Federal Rule of Procedure 56(e), which provides that "sworn or certified copies of all papers or

parts thereof referred to in an affidavit shall be attached thereto and served therewith," any

exhibit submitted in support of or in opposition to a motion for summary judgment must be

authenticated. Knight v. Schulman, 102 F. Supp.2d 867, 871 (S.D. Ohio 1999) (quoting Fed. R.

Civ. P. 56(e)); see also Jones v. Ohio State Univ., No. 2:05-CV-137, 2007 WL 1574115, at *7

(S.D. Ohio May 29, 2007) (to be admissible in summary judgment proceedings, documents must

be authenticated by and attached to an affidavit).

      Unsigned discovery responses without supplemental authentication are inadmissible as

evidence for the purpose of Federal Rule of Civil Procedure 56. Nelson v. City of Flint, 136 F.

Supp.2d 703, 715 (E.D. Mich. 2001). It is "irrelevant that the documents can be properly

authenticated if introduced at trial through a witness, if they have not been properly

authenticated when submitted in support or opposition to a motion for summary judgment."

Barlow v. Connecticut, 319 F. Supp.2d 250, 257 (D.Conn. 2004). Evidence that is neither

authenticated nor admissible "may be considered by the district court unless the opposing party

affirmatively raises the issue of the defect. The burden is on the opposing party to object to the

improper evidence; failure to object constitutes a waiver." Steele, 2005 WL 2124152 at *3

(quoting McQuain v. Ebner Furnaces, Inc., 55 F. Supp.2d 763, 770 (N.D. Ohio 1999)).

Nonetheless, "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [c]ertified copies of public records." Fed. R. Evid. 902(4). Such copies must be "certified as correct by the custodian or other person authorized to make certification." Id. Internal police reports and internal memoranda qualify as self-authenticating documents pursuant to Federal Rule of Evidence 902(4). See United States v. Lawrence, 934 F.2d 868, 871-72 (7th Cir. 1991) (when a party has produced the document in question in response to a subpoena or document request, he has implicitly authenticated the document); see also United States v. Weiland, 420 F.3d 1062, 1072 (9th Cir. 2005) (records of conviction for prior crimes were self-authenticating under Rule 902(4)); and United States v. Lechuga, 975 F.2d 397, 398-99 (7th Cir. 1992) (documents containing required certification admitted as self-admitting documents pursuant to Rule 902(4)). By producing a police report in discovery, the producing party vouches that the documents are what they are purported to be and a court cannot argue that the documents are not authentic. Fiordalisi v. Zubek, 342 F. Supp.2d 737, 742 (N.D. Ohio 2004). Moreover, authentication is not required for official publications "purporting to be issued by public authority." Fed. R. Evid. 902(5).

In the case at hand, the Court finds that the internal police reports and internal memoranda attached to Plaintiff's affidavits (Doc. No. 38; Doc. No. 41) are self-authenticating pursuant to Rule 902(4). In an email sent to Plaintiff on March 26, 2007, Defendants' counsel noted the public records request and promised to comply pursuant to R.C. 149.43. Doc. No. 40-3. The documents produced include memoranda from the Chief of Police to the City Manager and vice versa, disciplinary recommendations, and police reports of the incidents involving

Mynhier and Flack.  Doc. No. 41-3 at 1-2, 4-10, 16-21; Doc. No. 41-4 at 1-14, 22.  As such, they

are self-authenticating documents pursuant to Rule 902(4).  See Lawrence, 934 F.2d at 871-72.

While Plaintiff's knowledge of such documents arose through a public records request,

Defendants' written compliance with Plaintiff's public records request acts as a sufficient

certification that the documents are what they are purported to be.

2.  <u>Most of the documents are admissible pursuant to the<br>"public records" exception to the rule against hearsay</u>

Hearsay evidence cannot be considered on a motion for summary judgment.  <u>Wiley</u>, 20

F.3d at 225-26.  However, evidence not meeting this standard may be considered by the district

court unless the opposing party affirmatively raises the issue of the defect.  <u>Id.</u> at 226.

Federal Rule of Evidence 803(8) establishes the "public records and reports" exception to

the general rule that hearsay evidence is not admissible.  <u>See</u> Fed. R. Evid. 803(8).  Admissible

public records and reports include:

> Records, reports, statements, or data compilations, in any form, of public
> offices or agencies, setting forth (A) the activities of the office or agency, or
> (B) matters observed pursuant to duty imposed by law as to which matters
> there was a duty to report, excluding, however, in criminal cases matters
> observed by police officers and other law enforcement personnel, or (C) in
> civil actions and proceedings and against the Government in criminal cases,
> factual findings resulting from an investigation made pursuant to authority
> granted by law, unless the sources of information or other circumstances
> indicate lack of trustworthiness.

Fed. R. Evid. 803(8).

The Supreme Court has interpreted the "public records" exception broadly to include

both conclusions and opinions of public officers and agencies.  <u>Beech Aircraft Corp. v. Rainey</u>,

488 U.S. 153, 162 (1988); <u>see also</u> <u>Bank of Lexington & Trust Co. v. Vining-Sparks Secs., Inc.</u>,

959 F.2d 606, 616 (6th Cir. 1992) (opinions, conclusions, and evaluations, as well as facts, fall

17

within Rule 803(8)).  The rule is premised on "the assumption that a public official will perform his duty properly."  <u>Ellis v. Int'l Playtex, Inc.</u>, 745 F.2d 292, 300 (6th Cir. 1984).  However, the "public records exception . . . extends only to opinions of the agency of public office *itself*, not to those of its individual members contained within the records."  <u>Patterson v. Central Mills</u>, 64 Fed. Appx. 457, 462 (6th Cir. 2003) (emphasis in original); <u>see also</u> <u>United States v. Midwest Fireworks Mfg. Co.</u>, 248 F.3d 563, 566 (6th Cir. 2001).  The party opposing the admission of the report must overcome a presumption of admissibility by proving that the report is not trustworthy.  <u>Bank of Lexington</u>, 959 F.2d at 616 (quoting <u>Baker v. Elcona Homes Corp.</u>, 588 F.2d 551, 558 (6th Cir. 1978)).

Public records "must be admitted, if at all, under Rule 803(8) [.]"  <u>United States v. Weiland</u>, 420 F.3d 1062, 1074 (9th Cir. 2005).  One "may not circumvent the specific requirements of Rule 803(8) by seeking to admit public records as business records under 803(6)."  <u>Id.</u>  Public records are "regularly authenticated by proof of custody, without more."  <u>Lorraine v. Markel Am. Ins. Co.</u>, No. PWG-06-1893, 2007 WL 1300739, at *15 (D.Md. May 4, 2007).

The admissibility of a police report is appropriately considered under Federal Rule of Evidence 803(8).  <u>United States v. Versaint</u>, 849 F.2d 827, 831 (3d Cir. 1988).  Factual findings and matters observed by a police officer and contained in police reports are admissible under the public records exception to the hearsay rule.  <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 169-70 (1988); <u>see also</u> <u>Baker v. Elcona Homes Corp.</u>, 588 F.2d 551, 556 (6th Cir. 1978)  (police report a 'public record and report' within the meaning of the first part of Rule 803(8)).

Furthermore, Rule 803(8) "does not require that the official have personal knowledge of

18

the matters recorded." Nowell v. City of Cincinnati, No. 1:03-CV-859, 2006 WL 2619846, at *3 (S.D. Ohio Sept. 12, 2006). Instead, the Rule contemplates that "an investigator charged with making 'factual findings' will not have personal knowledge of the matter and will have to rely on other sources of information." Id.; see Combs v. Wilkinson, 315 F.3d 548, 555-56 (6th Cir. 2002) (noting that "[i]nvestigative reports 'embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge'") (quoting 2 MCCORMICK ON EVIDENCE § 296 (5th ed.1999)). Otherwise, an investigative report "would never be admissible as such reports typically are not prepared by persons directly involved in the matter under investigation." Combs, 315 F.3d at 555. In Nowell, the Court determined that a report by the Cincinnati Police Internal Investigations Section was admissible as a public record under Rule 803(8). Nowell, 2006 WL 2619846 at *4. In Combs, the Sixth Circuit held that a Use of Force Committee Report, based on staff and inmate interviews and numerous documents, was admissible under Rule 803(8). Combs, 315 F.3d at 555-56.

Rule 803(8) presumes the admissibility of an investigator's findings "unless the sources of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(C); see also Fed. R. Evid. 803(8) advisory committee note (Stating that the Rule "assumes admissibility in the first instance but with ample provision for escape if significant negative factors are present."). The Court may use four factors in assessing whether an evaluative report is trustworthy: (1) the timeliness of the investigation, (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted, and (4) possible motivation problems. Nowell, 2006 WL 2619846 at *4; see Fed. R. Evid. 803 advisory committee note to Paragraph (8).

19

At the outset, the Court quickly dispatches as hearsay the newspaper and internet articles pertaining to Officer Kirsch which Plaintiff attached to her affidavits. Doc. No. 38-4; Doc. No. 41-5. However, the police reports as to both Mynhier and Flack (Doc. No. 38-5 at 18-20; Doc. No. 38-6 at 9-14), as well as internal memoranda and investigative reports relating to disciplinary recommendations (Doc. No. 38 parts 5-6), are admissible as public records. Bill Becker and Mike Bruck did not have personal knowledge of Mynhier's and Flack's alleged violations of police policies and procedures. However, for Becker and Bruck to decide an appropriate punishment, they needed to rely on other sources of information. As to the timeliness of the investigations, there is no indication that the information Becker and Bruck relied upon was compromised. The booking room video was quickly examined to make sure Mynhier had not been justified in tasing the suspect. Doc. 38-5 at 3. Moreover, a peer review board gathered to evaluate whether a preponderance of the evidence suggested Mynhier committed the violations. Id. at 4.

As to the second indicia, the skill or experience of the official conducting the investigation, Bill Becker was the City Manager and Mike Bruck the Chief of Police. Both of these positions require elevated skill and experience. As to the third indicia, Bruck held a prompt pre-disciplinary hearing with Mynhier present before recommending a two-day suspension. Doc. No. 41-3 at 2. Similarly, Flack was given a prompt pre-disciplinary hearing. Doc. No. 41-4 at 2. Finally, as to whether the police department's investigation process was plagued by motivation problems or bias, the Court concludes that it was not. The documents attached to Plaintiff's affidavits suggest that numerous officers were involved in Mynhier's and Flack's disciplinary proceedings. See Doc. No. 41 parts 3-4. There are communications and

memoranda not just between Becker and Bruck, but numerous other officers such as Majors, Lieutenants, and Mynhier's and Flack's peers. Id. On balance, these factors weigh in favor of trustworthiness and, therefore, admissibility. Accordingly, the internal police memoranda and disciplinary recommendations are admissible pursuant to the public records exception.

As these records are admissible pursuant to Federal Rule of Evidence 803(8), the Court need not address the admissibility of such records under Rule 803(6).

Accordingly, for the reasons stated, Defendants' motion to strike is **GRANTED IN PART AND DENIED IN PART.**

## III. Motion for Summary Judgment

Having resolved the evidentiary questions concerning Plaintiff's affidavits, the Court turns to the merits of Defendants' motion for summary judgment.

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is

21

unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id.

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

22

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id., Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

## B. Analysis

At the outset, the Court notes that Plaintiff's federal and state law statutory discrimination claims are subject to federal evidentiary standards.  Courtney v. Landair Transport, Inc., 227 F.3d 559, 563 (6th Cir. 2000); Jones v. Kilbourne Medical Lab., 162 F. Supp. 2d 813, 831 n.20 (S.D. Ohio 2000), aff'd, 35 Fed. Appx. 203 (6th Cir. 2002).  Therefore, the Court may consider the federal and state law discrimination claims together.

### 1. Disparate Treatment

As stated, Plaintiff claims that Defendants treated her more unfavorably than similarly-

situated white male employees, causing her to be terminated from employment while others received more lenient punishment.  Plaintiff also claims that she was treated differently because she was not allowed to view her counselor's report deeming her fit for duty, nor did Defendants advise her to seek therapy after the incident.  In contrast, Plaintiff asserts that other white male police officers were given the chance to seek therapy despite being assessed as being unfit for duty.

A plaintiff may establish a prima facie case of gender discrimination either through direct evidence or circumstantial evidence.  Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1081 (6th Cir. 1994).  If the plaintiff presents direct evidence that the employer discriminated against her on the basis of gender, the burden of production shifts to the employer who then must show that it would have taken the same action even without the discriminatory motivation.  Id.

In the absence of direct evidence of discrimination, the plaintiff may establish a prima facie case of gender discrimination through the familiar McDonnell Douglas burden shifting framework.  Id.  Under this method, the plaintiff establishes a prima facie case of discrimination by showing: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the job lost or not gained; and 4) she was replaced by an individual outside of the protected class or treated less favorably than a similarly-situated employee outside of the protected class.  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir. 1995).  Once the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to proffer legitimate non-discriminatory reasons for its actions.  Manzer, 29 F.3d at 1082.

If the defendant meets its burden of production, the burden shifts back to the plaintiff to

show that the reasons proffered by the defendant are pretextual.  Id.  However, the burden of

persuasion remains with the plaintiff at all times.  St. Mary's Honor Center v. Hicks, 509 U.S.

502, 511 (1993).

      The plaintiff may prove pretext in three ways: 1) by showing that the defendant's reasons

had no basis in fact; 2) by showing that the reasons did not actually motivate the defendant; or 3)

by showing that the proffered reasons were not sufficient to warrant the action taken.  Kline v.

Tennessee Valley Auth., 128 F.3d 337, 346 (6th Cir. 1997).  When the plaintiff proves pretext by

the first or third methods, the fact finder may infer discrimination and the plaintiff need not

produce any additional evidence of discrimination.  Id.  In the second situation, the factual basis

for the discharge is not challenged; therefore, the plaintiff must adduce additional evidence of

discrimination in order to prevail.  Id. at 346-47.

      For purposes of summary judgment, Defendants concede that Plaintiff is a member of a

protected class as an Asian-American and/or female and that the termination of her employment

constituted an adverse employment action.  Defendants contend, however, that Plaintiff cannot

demonstrate that she was treated differently from other comparable, white male police officers.

Specifically, Defendants argue that Plaintiff has no evidence to support the allegation that other

similarly-situated white, male police officers had routinely been given more lenient punishment

for similar actions during their employment.  Moreover, Defendants argue Plaintiff has given no

evidence, other than rumors, to show that another Middletown Police Officer employed a taser or

other similar device against a non-resisting, handcuffed prisoner.  In opposition, however,

Plaintiff presents evidence supporting her claim that other similarly-situated officers who

committed comparable misdeeds received more lenient punishment and were able to undergo

therapy.

In order to be similarly-situated, the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment; rather, the plaintiff must show that all relevant aspects of her employment situation are nearly identical to the other employee's situation. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). To make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly-situated in all respects. Stotts v. Memphis Fire Dep't, 858 F.2d 289 (6th Cir. 1988). To be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them for it. Mitchell v. Toledo, 964 F.2d 577, 583 (6th Cir. 1992). The trial court should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. Ercegovich, 154 F.3d at 352.

In this case, a reasonable juror could find that Plaintiff was similarly-situated to both Kenneth Mynhier and Terry Flack. Defendants argue that Plaintiff has absolutely no evidence to support her claim that she was treated differently from other similarly-situated police officers. Plaintiff does, however, provide evidence for her claim in response to Defendant's motion for summary judgment. As to Mynhier, Plaintiff points to, inter alia, the disciplinary recommendations of Police Chief Mike Bruck and Major Mark Hoffman regarding the tasing incident. Doc. No. 41. Hoffman concluded there was a preponderance of evidence that Selby

was not offering any resistance when Mynhier employed the taser. Doc. No. 41-3 at 6.

Therefore, Mynhier's actions violated Rule 135 Use of Force and G.O. 1.3.4 Use of Authorized

Less than Lethal Weapon. Id. at 1. However, Mynhier was given a two-day suspension and

allowed to remain in his employment. Doc. 38, Ex. Aff. Ex. B, p.2. Given such facts, a

reasonable juror could find that Mynhier was similarly-situated and treated more favorably than

Plaintiff for similar conduct.

Furthermore, a reasonable juror could find that Plaintiff is similarly-situated to Officer

Terry Flack. When Flack arrived at a scene on April 14, 2005 in response to a dispatch, another

officer was on top of the suspect. The officer had handcuffed and secured the suspect, who was

not resisting arrest. Doc. No. 41-4 at 1. Officer Flack then approached the subdued suspect

and picked him up by the arm and side of the throat, choking him. Id. Flack claimed he had

only twisted the suspect's collar, even though the suspect had to be treated for neck injuries. Id.

Moreover, Flack used a two-year old mugshot of the suspect to describe what Flack had done to

him instead of the more recent one. Id. at 2. Consequently, Major Hoffman recommended that

Flack be disciplined for violations of, inter alia, the use of force and truthfulness policies. Id.

Both Chief of Police Mike Bruck and a group of Flack's colleagues determined that his

employment should be terminated. Id. at 1-2. Nonetheless, Flack was offered the chance to be

reinstated after serving a twenty-day suspension. Doc. 43, Ex. p. 4-5. A reasonable juror could

find that Flack was similarly-situated to Plaintiff and perhaps engaged in a similar premeditated

assault and coverup on a non-resisting prisoner.

Furthermore, given the recommendations of Dr. Daum, a reasonable juror could find that

Plaintiff was treated less favorably than Mynhier and Flack. Upon evaluating Plaintiff, Dr.

27

Daum concluded that she was psychologically fit to return to work on the condition she participate in psychotherapy. Doc. No. 25-3 at 3. However, after reevaluating Plaintiff, Daum communicated to Bruck that the condition be dropped. Id. at 8. In contrast, Flack's employment was not terminated even though Dr. Daum concluded Flack was not psychologically fit to perform his duties as a police officer. Doc. No. 43-2 at 3. Instead, Flack signed an agreement in which he pledged to attend counseling while serving a twenty-day unpaid suspension. Id. at 4-7. Given such an agreement between Defendants and Flack and the lack of an agreement between Defendants and Plaintiff, a reasonable juror, construing the evidence in the light most favorable to the non-moving party, could find that Plaintiff was discriminated against.

However, in response, Defendants argue that Plaintiff was terminated for a legitimate nondiscriminatory business reason – engaging in a criminal, premeditated assault on a non-resisting prisoner. Doc. 34. Defendants assert that "Plaintiff's conduct clearly warranted immediate termination from her position as a police officer." Id. Defendants further note that Plaintiff's conduct violated police policy and procedure regarding the use of force and truthfulness. Doc. 34. However, by Defendants' reasoning, a reasonable juror could find that Officer Mynhier's use of a taser against a non-resisting prisoner in violation of use of force rules warranted his immediate termination. A reasonable juror could find that Officer Flack was not punished nearly as severely as Plaintiff even though his conduct also constituted a premeditated assault on a non-resisting prisoner. Doc. 43, Ex. p. 4-5. If Plaintiff's conduct clearly warranted immediate termination, choking a prisoner so severely that he had to be treated for neck injuries warranted Flack's immediate termination as well. A jury could reasonably find that Defendants' reasons for terminating Plaintiff were not sufficient to warrant the action taken.

A reasonable juror could also conclude that Defendants' proffered reason did not actually motivate Defendants.  If Plaintiff was terminated while Officers Mynhier and Flack were not terminated for similar conduct, a juror could reasonably conclude Plaintiff was fired for a different reason from the one proffered.  Therefore, a genuine issue of material fact exists with regard to whether Defendants' legitimate nondiscriminatory business reason is pretextual.

Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's disparate treatment claim is not well-taken and is **DENIED**.

## 2. Retaliation

Plaintiff claims that Defendants retaliated against her by withholding information about Dr. Daum's assessment and recommendations and later terminating her employment. Defendants argue that they did so for a legitimate nondiscriminatory reason, but Plaintiff argues their reason is a pretext for retaliation.

In order to establish a prima facie case of retaliation, a plaintiff must establish that: 1) she engaged in activity protected by the anti-discrimination statutes; 2) the exercise of her rights under those statutes was known to the defendant; 3) thereafter, the defendant took an employment action adverse to the plaintiff; 4) there was a causal connection between the protected activity and the adverse employment action.  See Harrison v. Metropolitan Gov't, 80 F.3d 1107, 1118 (6th Cir. 1996), overruling on other grounds recognized in, Jackson v. Quanex Corp., 191 F.3d 647 (6th Cir. 1999).  To establish the causal connection required in the fourth prong, the plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not participated in protected activity.  See EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997); Jackson v.

RKO Bottlers of Toledo, Inc., 743 F.2d 370, 377 (6th Cir. 1984). Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. See Moon v. Transport Drivers, Inc., 836 F.2d 226, 230 (6th Cir. 1987). The Sixth Circuit has also recognized that an employee could state a case for retaliatory harassment where the employer "took every opportunity to make [her] life as an employee unpleasant." Harrison, 80 F.3d at 1119. The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met. See Avery Dennison, 104 F.3d at 861.

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir. 1994). If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are but a pretext for retaliation. Id. As mentioned in the discussion of Plaintiff's disparate treatment claim, the plaintiff may prove pretext in three ways: 1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient to warrant the actions taken. Kline v. Tennessee Valley Auth., 128 F.3d 337, 346 (6th Cir. 1997). A "legitimate inference of pretext is raised when . . . similarly-situated employees receive different disciplinary actions for what appears, in most instances, to be similar types of Department violations." Kielczynski v. Village of LaGrange, 122 F. Supp.2d 932, 952 (N.D. Ill. 2000); see also Hiatt v. Rockwell Int'l Corp., 26 F.3d 761, 770 (7th Cir. 1994) (holding that one

means of demonstrating pretext is to put forth evidence that employees outside the protected class who were involved in misconduct of comparable seriousness were not subject to similar adverse employment action).  However, the burden of persuasion remains with the plaintiff at all times.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

It appears for the purpose of summary judgment that Defendants concede that Plaintiff has established a prima facie case of retaliation.  Doc. No. 34 at 11.  However, Defendants argue that Plaintiff was terminated for a legitimate nondiscriminatory reason – her premeditated assault on a non-resisting prisoner.  Id.  Defendants contend that Plaintiff's conduct "clearly warranted immediate termination from her position as a police officer."  Id. at 9.  Defendants further argue that Plaintiff has presented no evidence to refute such a legitimate nondiscriminatory reason.  Id.

In response, Plaintiff argues that the legitimate nondiscriminatory reason proffered by Defendants is but a pretext for retaliation.  Plaintiff first alleges Defendants retaliated against her by withholding necessary and important information from her.  Doc. No. 38 at 14.  Dr. Daum initially concluded that Plaintiff was fit to continue as a police officer on the condition she participated in therapy.  Doc. 25-3.  Upon reevaluation, Daum concluded that Plaintiff did not have to participate in counseling and psychiatric treatment to be considered fit for duty.  Id.  In contrast, after Dr. Daum evaluated Flack, he concluded that Flack was not psychologically fit to perform the duties of a police officer.  Doc. No. 43-2 at 1-3.  Nonetheless, Flack was able to enter into an agreement whereby he promised to submit to examinations by a City-appointed psychologist and to comply with Dr. Daum's recommended treatment programs. Doc. No. 43-2 at 5.

Comparing Defendants' actions taken towards Plaintiff with those taken towards Flack

suggests that Defendants' proffered legitimate nondiscriminatory reason is pretextual.  Plaintiff

was never permitted to view Dr. Daum's report, nor was she given the chance to attend the

recommended therapy sessions.  Doc. No. 38-2.  Defendants have not presented any evidence to

contest Plaintiff's affidavit.  Yet, Officer Flack was allowed to enter into an agreement under

which he had the chance to attend counseling and could eventually return to work, even though

Dr. Daum had deemed him unfit for duty .  Doc. No. 43-2 at 5.  This is despite the fact that Flack

allegedly attempted to choke a handcuffed and subdued prisoner while simultaneously asking

him "why should I let you breathe motherfucker?," not to mention later trying to cover-up his

actions by lying about the suspect's mug shot.  Doc. No. 41-4 at 9.

Accordingly, Defendants' failure to alert Plaintiff to Dr.  Daum's report and not giving

her the chance to attend therapy tends to show that Defendants' reason for terminating her

employment are pretextual.  As discussed above, Flack's actions could lead a reasonable juror to

conclude that Plaintiff is similarly-situated to Flack.  The premeditated choking of a suspect and

the premeditated tasing of a suspect are both intended to inflict severe harm.  It seems to the

Court that Defendants could have just as easily terminated Flack's employment for committing a

premeditated assault on a non-resisting suspect.

Moreover, a reasonable juror could find that Defendants' proffered reasons for

withholding information from Plaintiff and terminating her employment did not actually

motivate Defendants.  After all, if Plaintiff's conduct clearly warranted immediate termination,

certainly Flack's conduct and his being labeled psychologically unfit for employment warranted

a similar penalty.  This is not to mention Officer Mynhier, who continued in his employment

despite tasing a nonviolent suspect three times.  Doc. No. 41-3 at 7-10.  Finally, if Plaintiff's

premeditated assault against a non-resisting prisoner was egregious enough to warrant her termination, a juror could conclude that Flack should have been similarly disciplined.  A reasonable juror could find that both Mynhier and Flack were involved in misconduct similar to Plaintiff but were not subject to the adverse employment actions that Plaintiff faced.  See Hiatt, 26 F.3d at 770.  Such a suggestion of pretext is enough to present a genuine issue for trial as to whether Defendants retaliated against Plaintiff by treating her differently from other similarly-situated white male officers.

Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim is not well-taken and is **DENIED**.

## D. Conclusion

In conclusion, Defendants' motion for summary judgment with respect to Plaintiff's disparate treatment claim is not well-taken and is **DENIED**.  Furthermore, Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim is not well-taken and is **DENIED**.   Finally, Defendants' motion to strike is **GRANTED IN PART** and **DENIED IN PART**.


**IT IS SO ORDERED**

Date    August 10, 2007                               s/Sandra S. Beckwith      
                                                Sandra S. Beckwith, Chief Judge
                                                 United States District Court